IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| LASHON HUDSON, | ) |
| *Plaintiff,* | ) |
| v. | ) |
| ARTHUR HOBBS,<br>South Central Correctional Center<br>255 West Highway 32<br>Licking, MO 65542 | ) No. _____ |
| CINDY ROACH,<br>South Central Correctional Center<br>255 West Highway 32<br>Licking, MO 65542 | ) **JURY TRIAL DEMANDED** |
| LADONNA MICHELE BUCKNER<br>16999 Highway N<br>Licking, MO 65542 | ) |
| *Defendants.* | ) |

**PETITION FOR DAMAGES**

Michael Henry Hudson ("Hudson") was murdered at South Central Correctional Center ("SCCC") on December 15, 2023, by members of a prison gang. In the months before Hudson's murder, the gang was trying to take control of Housing Unit 6 from guards and inmates, like Hudson, who were not members of the gang. The gang viciously assaulted Michael several times. Despite these assaults and the gang's violent reputation, prison staff took no action to separate or protect Hudson from gang members. As a result, Mr. Hudson was attacked again by gang members and died from the fourteen stab wounds they inflicted.

1

## PARTIES

1. LaShon Hudson ("Plaintiff") is a citizen of the United States of America and a resident of the State of Missouri. She resides in Kansas City, Missouri. Plaintiff is the mother of Michael Hudson.

2. Plaintiff's son, Michael Hudson, was in custody of the Missouri Department of Corrections and housed at South Central Correctional Center.

3. Defendant Arthur Hobbs was employed as a Correctional Officer at SCCC and was the supervising officer in Housing Unit 6 on December 15, 2023.

4. Defendant Cindy Roach was employed as a case manager at the facility and was responsible for the offenders incarcerated in Housing Unit 6 on December 15, 2023.

5. Defendant Ladonna M. Buckner (aka Michele Buckner) was employed as the Warden of SCCC on December 15, 2023.

6. All Defendants are sued in their individual capacity.

## JURISDICTION AND VENUE:

7. This action arises under the United States Constitution and laws of the United States and is brought pursuant to 42 U.S.C. § 1983.

8. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331 and 1343.

9. Jurisdiction supporting Plaintiff's claim for attorney's fees and costs is conferred by 42 U.S.C. § 1988.

10. Venue is proper under 28 U.S.C. § 1391(b) because all of the events alleged herein occurred within the State of Missouri, and all of the parties were residents of the State at the time of the events giving rise to this litigation.

11. Divisional venue is proper in the Southern Division because a substantial part of the events leading to the claims for relief arose in Texas County. W.D. Mo. L.R. 3.2(a)(2), (B)(2).

**FACTS**

12. Michael Hudson was incarcerated at South Central Correctional Center located in Licking, Missouri, and housed in Housing Unit 6 ("HU6").

13. Michael Hudson was first incarcerated at South Central Correctional Center on June 26, 2012, and had served approximately eleven years of his sentence at the time of his death.

14. Multiple offenders in HU6 are members of a "security threat group" or "STG," commonly known as a prison gang. This gang is recognized by the Missouri Department of Corrections and is active in several facilities, including SCCC.

15. Upon information and belief, Warden Buckner was aware of the STG's reputation and attempts to control HU6.

16. Upon information and belief, Warden Buckner was aware of the STG's use of violence to further their activity, including introducing illicit substances into the facility.

17. It was known to Defendants and other SCCC staff that members of this gang had been involved in previous violent incidents. These included stabbings at SCCC, and specifically in HU6.

18. The gang is officially designated as a Security Threat Group ("STG") by the Department of Corrections because of their violent conduct and criminal activities across multiple correctional facilities.

19. It was well known in the facility by correctional officers and other prison staff that Hudson had been antagonized and harassed by this STG.

20. Upon information and belief, a "hit" had been placed on Hudson by the leader of the STG, Offender Baker, prior to the incident on December 15.

21. Upon information and belief, Offenders Kevon Lee and Elijah Jones were members of the STG led by Offender Baker and served as enforcers.

22. During the morning of December 15, offenders Lee and Jones were observed moving around HU6 together before the assault on Hudson.

23. It was well known to correctional officers and each of the Defendants that there was an ongoing conflict between Hudson and the gang leader due to Hudson's resistance to allowing the STG to control HU6.

24. Approximately two weeks before the incident on December 15, Hudson was attacked by several gang members while in the yard. Even though he was in restraints when Hudson was assaulted, gang members kept kicking and punching him. This attack happened despite several correctional staff members escorting Mr. Hudson, and efforts to intervene were unsuccessful.

25. Hudson had been attacked by members of the gang on at least one other occasion prior to the assault in the yard.

26. After learning about previous attacks by gang members, Plaintiff Hudson started reaching out to staff members, including Defendant Cindy Roach, to try and get her son placed in protective custody. Defendant Roach did not act or investigate the requests.

27. Following the previous assaults, Hudson asked Defendant Roach, the Case Manager of HU6, to move him to a different housing unit.

28. Defendant Roach kept Hudson in HU6 despite the various attacks by the gang on Hudson, Hudson's request to be moved, and knowledge of the continued threat on Hudson by the gang.

29. After the morning meal on the day of the assault, Sergeant Hobbs had heard from prisoners that there would be a fight between the STG and individuals not affiliated with the gang.

30. Sergeant Hobbs had personal knowledge of the ongoing conflict between Hudson and the STG members.

31. Sergeant Hobbs had personal knowledge that members of the STG physically attacked Hudson in the week before the assault.

32. Sergeant Hobbs had been informed on the day of the assault by another officer, Kenneth Hunt, that Hudson was going to be involved in a fatal fight with an STG member that day.

33. Sergeant Hobbs received this information well before Hudson was assaulted and killed.

34. Sergeant Hobbs neither reported this specific threat of assault against Hudson higher up the chain of command nor took any action to protect Hudson.

35. Upon information and belief, Sergeant Hobbs failed to inform the HU6 assigned control room officer, Officer Adrienne McCane, of the immediate threat to Hudson's safety.

36. Sergeant Hobbs did not take action to move Hudson into protective custody or another housing unit.

37. Sergeant Hobbs had long known about safety threats to Wing C-D, where Hudson was incarcerated, and that the housing unit required strong and tenured officers to manage.

38. On December 15, Sergeant Hobbs designated Adrienne McCane as the housing unit control room officer in HU6. In this role, McCane was responsible for conducting document security checks of the wing and overseeing the housing unit security monitors.

39. Upon information and belief, Sergeant Hobbs had personal knowledge that Officer McCane was not regularly assigned to HU6 and knew that Officer McCane had professional issues when handling offenders, in that Sergeant Hobbs didn't want McCane in the housing units due to her "body language" with offenders.

40. On the morning of December 15, Officer McCane falsely documented the security checks as complete in all wings of HU6 on the Chronological log, even though the checks had never been completed.

41. Upon information and belief, Sergeant Hobbs also assigned Officer Norman Valtierra, who was on his first day of work, to shadow Officer McCane in the HU6 Control Bubble.

42. Warden Buckner knew that members of the STG had previously assaulted or threatened the safety of non-STG members multiple times in HU6.

43. Upon information and belief, multiple correction officers told Warden Buckner that the security threat in HU6 needs to be managed by experienced officers.

44. Upon information and belief, Warden Buckner knew of the STG's power over HU6 and ability to manipulate staff members to allow their criminal activities to occur.

45. Warden Buckner took no action to dismantle the STG in the facility and let their criminal activities go unchecked until she was escorted out by security in January 2025.

46. Warden Buckner allowed unqualified individuals to be hired at the facility and placed in areas in which the STG would have the ability to manipulate them, such as individuals with no training or experience in a correctional setting.

47. Warden Buckner was removed as Warden of SCCC on January 1, 2025.

48. Upon information and belief, on the same morning that Sergeant Hobbs was informed regarding the upcoming fight, the leader of the STG, Baker, using his power, had a Crisis Intervention officer remove Officer Falwell from Wing C-D and transferred to Wing A-B.

49. Sergeant Hobbs accepted the request of Baker and transferred Officer Falwell, who was previously assigned to Wing C-D, to Wing A-B.

50. Officer Falwell was a more experienced officer who had conflicts with the STG after writing up Offender Baker. The STG was unable to manipulate him and was replaced in C-D Wing by officers with less experience.

51. Upon information and belief, Sergeant Hobbs failed to maintain HU6, Wing C-D, adequately staffed for safety on the day of the assault.

52. On December 15th, 2023, around 10:12 am, Hudson was assaulted on the floor of HU6 by offender Kevon Lee.

53. Offender Kevon Lee and offender Elijah Jones are members of the specific STG that had conflict with Hudson. Elijah Jones aided in the planning and execution of the attack on Hudson.

54. Hudson was stabbed fourteen times by Lee with a homemade knife. Two knives were recovered from the scene.

55. Hudson's stab wounds were inflicted upon multiple areas of his body, including a stab wound on the right side of his neck.

56. As a direct result of this assault, Hudson died.

# COUNT I – DEFENDANT ROACH WAS DELIBERATELY INDIFFERENT TO A KNOWN AND FORESEEABLE DANGER WHICH RESULTED IN HUDSON'S DEATH IN VIOLATION OF HIS 8TH AMENDENT RIGHT TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT

57. Plaintiff incorporates and adopts by reference every allegation set forth in paragraphs 1 through 55 above as if set forth herein.

58. At all relevant times, Defendant Roach acted under color of state law.

59. At all relevant times, Defendant Roach was performing government functions.

60. Defendant Roach was responsible for Hudson's safety.

61. Defendant Roach was aware that Hudson had requested a transfer from that Housing Unit because of a legitimate and immediate threat to his safety.

62. Defendant Roach deliberately disregarded Hudson's and his mother's requests to be transferred and, by failing to investigate his motivations for transfer, was indifferent to the safety risks to Hudson necessitating a unit transfer.

63. Upon information and belief, Defendant Roach knew that Hudson was under a substantial risk of bodily harm, up to and including, fatal harm by other inmates in his housing unit.

64. Defendant Roach knew that Hudson had been assaulted in the week prior to his fatal assault.

65. Defendant's failure to intervene or take obvious mitigating action demonstrated deliberate indifference to the substantial risk to Hudson's safety, well-being, and constitutional rights to be free from cruel and unusual punishment in the form of physical harm caused by a fellow inmate.

66. Defendant Roach knew of or consciously disregarded the obvious and substantial risk of harm perpetrated against Hudson and failed to intervene, mitigate, or stop the events. This was the driving force to his death.

67. As a result of the Defendant's failure to act, Plaintiff suffered untimely and wrongful death in violation of the Eighth Amendment.

68. Defendant Roach's actions were willful, wanton, and deliberately indifferent to the substantial safety risk of Hudson.

### COUNT II – SERGEANT HOBBS WAS DELIBERATELY INDIFFERENT TO A KNOWN AND FORSEEABLE DANGER, RESULTING IN HUDSON'S DEATH IN VIOLATION OF THE 8TH AMENDMENT RIGHT TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT

69. Plaintiff incorporates and adopts by reference every allegation set forth in paragraphs 1 through 55 above as if set forth herein.

70. At all relevant times, Sergeant Hobbs acted under color of state law.

71. At all relevant times, Sergeant Hobbs performed government functions.

72. Sergeant Hobbs was responsible for the safety of Hudson. By being in his care, Defendant was responsible for preventing acts of physical and fatal violence against Hudson by fellow inmates, including Lee.

73. Sergeant Hobbs knew that Hudson was under a substantial risk of physical bodily harm, up to and including fatal harm by other inmates in his housing unit.

74. Sergeant Hobbs was aware that Hudson had been assaulted in the week prior to this incident.

75. Sergeant Hobbs was aware that credible threats to Hudson's safety had been made in the days and hours prior to the incident on December 15th, 2023.

76. Sergeant Hobbs was deliberately indifferent to the substantial risk to Hudson's life and safety.

77. Defendant's failure to intervene or take obvious mitigating action demonstrated deliberate indifference to the substantial risk to Hudson's safety, well-being, and constitutional rights to be free from cruel and unusual punishment in the form of physical harm caused by a fellow inmate.

78. Defendant Hobbs failed to protect Hudson from a known harm.

79. Defendant Hobbs knew of or consciously disregarded the obvious and substantial risk of harm perpetrated against Hudson and failed to intervene, mitigate, or stop the events. This was the driving force to his death.

80. As a result of the Defendant's failure to act, Plaintiff suffered untimely and wrongful death in violation of the Eighth Amendment.

81. Defendant Hobbs' conduct was willful, wanton, and deliberately indifferent to the substantial safety risk of Hudson.

**Count III- WARDEN L. MICHELE BUCKNER WAS DELIBERTLY INDIFFERENT TO A KNOWN AND FORESEEABLE DANGER, RESULTING IN THE DEATH OF MICHAEL HUDSON IN VIOLATION OF THE 8TH AMENDMENT**

82. Plaintiff incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 55 above as if set forth herein.

83. At all relevant times, Warden Buckner was acting under the color of state law.

84. At all relevant times, Warned Buckner performed a government function.

85. Warden Buckner was responsible for the safety and well-being of all inmates in her facility including Michael Hudson. By being in her care, Defendant was responsible for preventing acts of physical and fatal violence against Hudson by fellow inmates, including Lee.

86. Upon information and belief, Warden Buckner knew of the control the STG had on HU6 and elsewhere in SCCC.

87. Warden Buckner failed to implement policies or act to remove the threat the STG posed to non-members in her facility.

88. Upon information and belief, Warden Buckner knew of the assaults that had occurred in HU6 to Michael Hudson, from not only information given to her in the role as Warden, but also Plaintiff Hudson reaching out to her office regarding her son's safety.

89. Despite knowing about the direct threats to Michael Hudson, Warden Buckner failed to take action to ensure Michael Hudson's safety and well-being or to protect him from an attack by the STG.

90. Upon information and belief, Warden Buckner allowed officer misconduct to occur, resulting in additional threats to inmates.

91. Under Warden Buckner's watch, the STG was allowed to have free rein over at least HU6, placing Michael Hudson at risk.

92. Warden Buckner was escorted from the Facility on or about January 7, 2025.

93. Upon information and belief, Warden Bucker knew that this STG posed a substantial risk, specifically targeting non-STG members within at least HU6, including Hudson.

94. Upon information and belief, Warden Buckner was deliberately indifferent to the substantial risk to Hudson's life and safety.

95. Upon information and belief, Warden Buckner was aware of ongoing misconduct by officers but did not address or discipline the officers responsible.

96. Warden Buckner's failure to address the misconduct made HU6 less safe for the inmates housed there, including Hudson.

97. Warden Buckener's failure to intervene or take obvious mitigating action constituted deliberate indifference to the substantial risk to Hudson's safety, well-being, and constitutional rights to be free from cruel and unusual punishment in the form of physical harm perpetuated by a fellow inmate.

98. Warden Buckner failed to protect Hudson from known and deadly harm.

99. Warden Buckner knew of or consciously disregarded the obvious and substantial risk of harm perpetrated against Hudson and failed to intervene, mitigate, or stop the events. This was the driving force to his death.

100. As a result of the Defendant's failure to act, Plaintiff suffered untimely and wrongful death in violation of the Eighth Amendment.

101. The conduct of Warden Buckner was willful, wanton, and deliberately indifferent to the substantial safety risk of Hudson.

## JURY DEMAND

Plaintiff demands a trial by jury pursuant to Fed. R. Civ. P. 38(b).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for a judgment against Defendants for compensatory damages in an amount to be determined at trial, punitive damages against the Defendants in an amount to be determined at trial, attorneys' fees, costs, and disbursements, pursuant to law, and such other relief as this Court deems just and proper.

Dated: December 15, 2025

                                          Respectfully submitted,

                                          **KHAZAELI WYRSCH, LLC**

                                          /s/ Brendan Roediger
                                          Brendan Roediger, 60585MO
                                          James R. Wyrsch, 53197MO
                                          Javad M. Khazaeli, 53735MO
                                          John M. Waldron, 70401MO
                                          Leah Marie Fessler 76824MO
                                          911 Washington Avenue, Suite 211
                                          St. Louis, Missouri 63101
                                          (314) 288-0777
                                          (314) 400-7701 (Fax)
                                          brendan.roediger@slu.edu
                                          james.wyrsch@kwlawstl.com
                                          javad.khazaeli@kwlawstl.com
                                          jack.waldron@kwlawstl.com
                                          leah.fessler@kwlawstl.com

                                          Attorneys for Plaintiff